IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal No. 4:05-cr-227 |
| v. ) | |
| ) | GOVERNMENT'S RESISTANCE TO |
| DANIEL LYNN BROWN, JR., ) | DEFENDANT'S MOTION FOR |
| ) | RECONSIDERATION OF THE |
| Defendant. ) | DENIAL OF COMPASSIONATE |
| ) | RELEASE |

The Court should deny defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) because he has not exhausted administrative remedies; he has no medical condition that constitutes "extraordinary and compelling reasons" justifying early release; a reduction of his sentence is inconsistent with the 18 U.S.C. § 3553(a) sentencing factors; and he remains a danger to the community.

1.      On March 31, 2006, Defendant pleaded guilty to conspiracy to distribute methamphetamine (Count 1), possession with intent to distribute methamphetamine (Count 4), and two counts of possession of a firearm in furtherance of drug trafficking crimes (Counts 5 and 15). (DCD 76.) On December 7, 2007, Defendant was sentenced to 150 months imprisonment on Counts 1 and 4, 60 months on Count 5 (consecutive), and 300 months on Count 15 (consecutive). (DCD 116.) On August 2, 2019, Defendant filed a motion under 18 U.S.C. § 3582(c)(1)(A) for compassionate release, and a reduction of his sentence to time served. (DCD 220.) This Court denied that motion. (DCD 227.) This Court is now liberally construing a letter dated March 15, 2020 as a

motion to reconsider its denial. (DCD 228.) The government resists this reconsideration.

2. The burden is on defendant to show that he is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A). *United States v. Dembry*, No. 3:06-cr-0587, Document 125, at 5 (S.D. Ia. Mar. 28, 2020) (Jarvey, C.J.); *United States v. Heromin,* No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, *2 (M.D. Fla. June 7, 2019).

3. The statute, as amended by the First Step Act, permits either the Director of the Bureau of Prisons or the defendant to file a motion for a reduced term of imprisonment. 18 U.S.C. § 3582(c)(1)(A); *see* First Step Act, PL 115-391, Dec. 21, 2018, 132 Stat. 5194, 5239.

4. A defendant may file such a motion, however, only after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); 28 C.F.R. § 571.61 (describing initiation of request for compassionate release).

5. In January 2019, Defendant previously asked the warden to grant him compassionate release, but that request did not reference COVID-19 concerns. "Proper exhaustion necessarily requires the inmate to present the same factual basis for the compassionate-release request to the warden." *United States v. Mogavero*, No. 2:15-cr-00074, 2020 WL 1853754, at *2 (D. Nev. Apr. 13, 2020) (denying compassionate release on similar facts); *see also United States v. Jenkins*, 2020 WL 1872568, at *1 (D.

Neb. Apr. 14, 2020); *United States v. Valenta*, 2020 WL 1689786, at *1 (W.D. Pa. Apr. 7, 2020). Because BOP has never had an opportunity to consider Defendant's claims for compassionate release based on COVID-19, he has not exhausted those claims. At the hearing on April 20, 2020, Defendant confirmed he had not filed a new request for compassionate release based on COVID-19 concerns.[1]

6. The Court does not have authority to excuse defendant's failure to exhaust administrative remedies, and the COVID-19 pandemic does not change this. Exhaustion is a statutory requirement created by Congress, and courts cannot re-write the statute to remove the requirement. *See, e.g., Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016); *United States v. Raia*, 954 F.3d 594 (3rd Cir. 2020); *United States v. Goodwin*, No. 4:18-cr-00021, Document 156 at 3 (S.D. Ia. April 17, 2020) (Ebinger, J.) ("[U]nless a defendant complies with the First Step Act's exhaustion requirement, the Court lacks authority to grant compassionate release… [and] [t]he COVID-19 pandemic does not and cannot alter the Court's conclusion on this question of statutory interpretation."); *United States v. Fuller*, No. CR17-0324, 2020 WL 1847751, at *2 (W.D. Wash. Apr. 13, 2020) ("[F]ailure to exhaust administrative remedies is fatal to a compassionate release provision even in light of . . . COVID-19.").

7. The Supreme Court has recognized exceptions to the exhaustion requirement, but those exceptions apply only "where Congress has not clearly required

---

[1] Defendant is now also claiming he has medical conditions that were not presented to the Warden, including a history of asthma, methamphetamine abuse, and an undiagnosed compromised immune system.

exhaustion." *McCarthy v. Madigan*, 503 U.S. 140, 144, 146-48 (1992). In contrast, "[w]here Congress specifically mandates, exhaustion is required." *Id.* at 144. Because "the compassionate release exhaustion requirement . . . is contained in the statute itself[, it is] not subject to exceptions not found in the statute." *United States v. Underwood*, Crim. Action No. TDC-18-0201, 2020 WL 1820092, at *3 (D. Md. Apr. 10, 2020).[2]

8. Congress authorized BOP to serve as the first arbiter of all requests for compassionate release, and it is BOP who best understands how to respond to such requests in the context of the COVID-19 pandemic. BOP has been planning for a potential pandemic since January 2020. *See infra* ¶¶ 26-27.

9. As the Third Circuit has explained, given BOP's efforts and "shared desire for a safe and healthy prison environment," and in light of the flood of motions for release brought on by COVID-19, "strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Raia*, 954 F.3d at 594.

10. Defendant's failure to exhaust administrative remedies "presents a glaring roadblock foreclosing compassionate release at this point." *Id.*; *accord Dembry*, No. 3:06-cr-0587, Document 125, at 1.

---

[2] In any case, the only exception possibly applicable here is if waiting to exhaust remedies would cause defendant irreparable harm. *McCarthy*, 503 U.S. at 147. Defendant has not made such a showing. As of April 27, 2020, there were no reported cases of COVID-19 at FCI Williamsburg. Defendant has not shown that BOP is not equipped to handle the pandemic at his prison. He also has not shown that he is an at-risk individual.

11.     Setting aside Defendant's failure to exhaust, his motion also must be denied because he fails to satisfy the other prerequisites to obtain compassionate release. Under the statute, this court may reduce a term of imprisonment if defendant establishes that: (1) "extraordinary and compelling reasons" support a reduction; (2) the reduction is consistent with the Sentencing Commission's applicable policy statements; (3) the factors set forth in 18 U.S.C. § 3553(a) support the reduction; and (4) the defendant is not a danger to any victim or the community as provided in 18 U.S.C. § 3142(g). 18 U.S.C. § 3582(c)(1)(A); USSG §1B1.13.

12.     Title 28, United States Code, Section 994(t) requires the Sentencing Commission to promulgate policy statements describing what qualifies as "extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."

13.     Pursuant to section 994(t), the Sentencing Commission issued USSG §1B1.13 as its policy statement for compassionate release motions. Because any sentence reduction under 18 U.S.C. § 3582(c)(1)(A) must be consistent with the Sentencing Commission's policy statements, section 1B1.13 is binding on this Court. *See Dillon v. United States*, 560 U.S. 817, 827 (2010).

14.     Application Note 1 of USSG §1B1.13 sets forth the "extraordinary and compelling reasons" that may justify compassionate release. Medical conditions can constitute "extraordinary and compelling reasons" under USSG §1B1.13, but only if the defendant is suffering from a terminal illness, or (1) the defendant is suffering from (a) a serious physical or medical condition, (b) a serious functional or cognitive

impairment, or (c) deteriorating physical or mental health because of the aging process, and (2) the medical issue "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG §1B1.13, comment. (n.1).

15. "Extraordinary and compelling reasons" also include "a serious deterioration in . . . health because of the aging process," but only for those prisoners 65 or older who have served at least ten years or 75% of their sentence. *Id.*[3]

16. Compassionate release on the basis of a medical condition is "rare" and "extraordinary." *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019); *United States v. Willis*, 352 F. Supp. 3d 1185, 1188 (D.N.M. 2019). Many federal inmates "have medical conditions that make confinement more difficult," and this alone is not a basis for relief. *United States v. Malone*, 2019 WL 3337906, at *2 (W.D. Va. July 25, 2019). Defendant has not demonstrated he falls within the category of defendants who present an "extraordinary and compelling" medical reason for compassionate release.

17. This Court has previously found that Defendant does not have a terminal illness. (DCD 227.) Defendant is 43 years old. He has not submitted medical evidence suggesting he is suffering from a serious physical or medical condition,

---

[3] Application Note 1 also contains two other "extraordinary and compelling reasons"—certain family conditions and other circumstances that the Director of the BOP has determined to be "extraordinary and compelling" (which are listed in BOP Program Statement 5050.50, which is available at https://www.bop.gov/policy/progstat/ 5050_50_EN.pdf). Neither of these "reasons" are applicable to defendant's case.

serious functional or cognitive impairment, or a deterioration in physical or mental health due to aging. Although Defendant does have lasting complications from a prior leg surgery, it is not enough and does not indicate that he is enduring an "extraordinary and compelling" medical condition. *See, e.g.*, *United States v. Clark*, Crim. Action No. 17-85-SDD-RLB, 2020 WL 1557397, at *2 (M.D. La. Apr. 1, 2020) (denying release to 67-year old prisoner, who was in the "high-risk" age group for COVID-19 and had a history of high blood pressure, high cholesterol, and sleep apnea); *United States v. Gileno*, No. 3:19-cr-161, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) (denying release to inmate suffering from medical issues related to previous back injury).

18. In Defendant's brief, Defendant now claims that he has asthma based on one line in his 2005 pre-sentence report. (DCD 235 at 5; PSR ¶ 123 (diagnostic impressions included "asthma by history.").) In that same presentence report, Defendant denied a history of chronic medical conditions, and was not prescribed any medications to treat asthma. (PSR ¶ 121.) A review of the past year's medical records confirm Defendant is not currently suffering from asthma. (Gov. Ex. 1.) In fact, as recently as March 2020, Defendant denied having any respiratory symptoms and an exam confirmed the same. (*Id.* at 114.) Regardless, Defendant has done nothing to show his alleged asthma is a severe medical condition requiring release, and other courts have ruled that it is not. *See Gileno,* 2020 WL 1307108, at *3. Nor does

Defendant's past use of methamphetamine qualify as an extraordinary and compelling medical condition.[4]

19. Even assuming defendant is suffering from a serious medical condition, he still fails to satisfy the "extraordinary and compelling" standard because he has not shown that the condition "substantially diminishes" his ability to provide self-care in the corrections environment, or that he is not expected to recover from the condition. *See* 18 U.S.C. § 3582(c)(1)(A). Indeed, his medical conditions have been addressed and managed during his time at FCI Williamsburg up to this time.

20. Ordinarily, the foregoing would end the analysis. But Defendant claims that his medical conditions, when coupled with the COVID-19 pandemic, rise to the level of "extraordinary and compelling reasons."

21. The COVID-19 pandemic, however, does not change the conclusion that defendant's motion should be denied. "[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 594.

22. Rather, for a defendant to obtain compassionate release based on a medical condition that, standing alone, would not rise to the level of "extraordinary

---

[4] In an email to the Court on April 25, 2020, defense counsel now also claims Defendant has an undiagnosed low white blood cell count. This medical condition was not alleged in the original motion, presented to the Warden, nor can it be shown by Defendant that it is a severe medical condition requiring release.

and compelling reasons" he must show: (1) a medical condition (not a condition generally applicable to many prisoners, such as advanced age) that puts him at an increased risk of harm in the event he contracts COVID-19, and (2) a "particularized risk" that defendant is more likely to contract COVID-19 at the facility in which he is housed than if released. *United States v. Moskop*, No. 11-CR-30077, 2020 WL 1862636, at \*1-\*2 (S.D. Ill. Apr. 14, 2020); *United States v. Gillis*, No. 14-cr-00712, 2020 WL 1846792, at \*3 (C.D. Cal. Apr. 9, 2020); *see, e.g.*, *Korn*, 2020 WL 1808213, at \*6-\*7 (denying release even though defendant's "medical conditions place him at increased risk of contracting and succumbing to COVID-19," and the forty COVID-19 cases at defendant's facility, because there was no evidence BOP was unable to "guard against or treat" the virus).

23. Because Defendant cannot satisfy either prerequisite, the Court should deny his motion.

24. Defendant has not shown that he is at high risk of COVID-19 under the CDC guidelines, or that there is <u>any</u> transmission at FCI Williamsburg. His general concerns about COVID-19 do not justify release. *See Korn*, 2020 WL 1808213, at \*6; *Gillis*, 2020 WL 1846792, at \*3; *see Carter v. Santa Fe Adult Detention Ctr.*, No. CV 20-00271, 2020 WL 1550888, at \*2 (D.N.M. Apr. 1, 2020).

25. Even assuming Defendant may be more susceptible to COVID-19, he has not shown that BOP's plan "is inadequate to manage the pandemic" within FCI Williamsburg or that the facility is unable to treat him. *Gileno*, 2020 WL 1307108, at \*4. Courts should deny motions for release, even for inmates "at extremely high risk

to contract COVID-19," where the defendant has failed to show that the facility's response to the virus was inadequate, or failed to show "any particularized risk" to himself. *See United States v. Ciccone*, 2020 WL 1861653, at *3 (N.D. Ohio Apr. 14, 2020); *Moskop*, 2020 WL 1862636, at *1-*2; *see also Korn*, 2020 WL 1808213, at *6 (denying release, despite pandemic, where defendant's serious heart condition was "essentially the same as when he arrived" at the prison).

26.     BOP has been devoting all available resources to protecting inmates from COVID-19 and has been planning for a potential pandemic since January 2020. BOP has since taken measures to mitigate the risk of transmission, including by limiting social visits to and tours of facilities, suspending inmate movements, screening inmates and staff, and prioritizing home confinement of inmates. *Federal Bureau of Prisons COVID-19 Action Plan*, Fed. Bureau of Prisons (Mar. 13, 2020, 3:09 PM), https://www.bop.gov/resources/news/ 20200313_covid19.jsp; Memorandum from Attorney General William Barr to Director of BOP (Mar. 26, 2020), *available at* https://www.justice.gov/file/1262731/download.

27.     Since March, BOP has increased home confinement by over 40%, and on April 3, the Attorney General exercised emergency authority under the CARES Act to increase home confinement further.[5] *Update on COVID-19 and Home Confinement*,

---

[5] In deciding whether to move a prisoner to home confinement, BOP considers numerous factors, including (1) the age of the prisoner; (2) the vulnerability of the prisoner to COVID-19; (3) the security level of the facility in which the prisoner is located; (4) the prisoner's score under Prisoner Assessment Tool Targeting Estimated Risk and Needs; (5) the prisoner's crime of conviction and danger to the community; and (6) the prisoner's reentry and travel plan. BOP's goal is to perform an

Fed. Bureau of Prisons (Apr. 5, 2020, 6:40 PM), https://www.bop.gov/resources/news/20200404_covid19_home_confinement.jsp; Memorandum from Attorney General William Barr to Director of BOP (Apr. 3, 2020), *available at* https://www.justice.gov/file/1266661/download.

28. Although the COVID-19 pandemic is certainly a crisis, Defendant does not offer extraordinary and compelling reasons why this circumstance justifies *his* early release. He also has not shown that he is more likely to contract COVID-19 at FCI Williamsburg than if released. Defendant's motion should be denied on these grounds alone.

29. The 18 U.S.C. § 3553(a) factors also weigh against granting compassionate release. Defendant is a recidivist methamphetamine dealer who used firearms in furtherance of his drug-trafficking. He was previously sentenced in 1998 in the District Court for the Southern District of Iowa for possession with the intent to distribute methamphetamine. (PSR ¶ 100.) During that prior methamphetamine offense, a firearm and over $11,000 were seized from the vehicle Defendant was traveling in, along with nine boxes of ammunition from Defendant's vehicle. (*Id.*) Defendant served a period of incarceration and was discharged from supervised

---

individualized assessment of each prisoner to determine whether he or she should be transferred to home confinement. *See supra* Memorandum from Attorney General William Barr to Director of BOP (Mar. 26, 2020).

In addition, BOP's pre-existing authority to move prisoners to home confinement continues to apply. *See* 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). And BOP is also using its furlough authority under 18 U.S.C. § 3622, although its focus is on home confinement.

release in 2001. Then, starting at least as early as March 2004, Defendant possessed to distribute or distributed at least 20 pounds of methamphetamine. (PSR ¶ 8.) He also admitted to possessing two firearms in furtherance of his drug trafficking; one on July 20, 2005 (Count 5; PSR ¶¶ 43-51), and a second on October 20, 2005, which he admitted he discharged (Count 15). (*Id.*) Five different individuals saw Defendant with a gun during Defendant's methamphetamine dealings. (PSR ¶¶ 18, 21, 30, 33, 37, 39, 53, 56, 58.) On August 3, 2005, Defendant questioned a confidential informant as to why s/he went to Des Moines, presumably because Defendant believed the individual had been cooperating with law enforcement, all while loading bullets into a handgun. (PSR ¶ 53.) Given Defendant's possession of weapons and the fact that he had previously stated that he intended to use firearms against others, including law enforcement, significant safety precautions were taken during an October 20, 2005 search warrant at Defendant's residence. (PSR ¶ 59.) During the warrant, Defendant hid under his pickup truck with an SKS rifle, which he used to shoot at law enforcement. (PSR ¶ 60; DCD 77 at 25.) He further resisted arrest, requiring officers to use a Taser three times to subdue Defendant. (*Id.*) His sentence of incarceration reflects the seriousness of his offense and Defendant's history and characteristics.

30. Defendant is also a danger to the community. Defendant's repeated use and possession of firearms during drug trafficking crimes demonstrates that he is a danger to the community. Defendant was willing to shoot a firearm at law enforcement when law enforcement attempted to place him under arrest. Even after

discharging the rifle, Defendant continued to physically resist arrest. This factor weighs in favor of denying Defendant's reconsideration request.

31.    In this Court's denial of compassionate release, it noted that any relief would be premature because even if the First Step Act applied retroactively to Defendant's multiple § 924(c) counts of conviction, Defendant would still face 210 months in prison. (DCD 227 at 11.) This is incorrect—he would face a much higher sentence. Defendant's sentence under current law would be 150 months on Counts 1 and 4, a consecutive 60 months on Count 5, and a consecutive 120 months on Count 15 (because the firearm was discharged), for a total of 330 months. Even in the case of only one § 924(c) count of conviction, Defendant's sentence would be 150 months on Counts 1 and 4, and a consecutive 120 months on Count 15, for a total of 270 months. In any case, the Court should not grant release based on supposed sentencing disparities caused by the stacking of § 924(c) counts. Whether a statute applies retroactively is a matter for Congress to decide. In the First Step Act, Congress decided that the change in penalty for stacked § 924(c) counts would not be retroactive. This Court should not use the compassionate release statute to override Congress's judgment. Defendant has served approximately 174 months. Relief based on any sentencing disparity is not appropriate.

32.    Defendant's claims regarding his exemplary rehabilitative record do not change the calculus: "Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); USSG §1B1.13, comment (n.3); (DCD 227 at 9.).

33. Defendant also has "failed to provide any evidence that there is a suitable release residence or provided any release plan to ensure that [he] is properly monitored," nor has defendant demonstrated a means of travel to a suitable residence that is currently available and safe. *United States v. Van Dyke*, No. 2:15-CR-0025, 2020 WL 1811346, at *3 (E.D. Wash. Apr. 8, 2020).

Because Defendant has failed to satisfy the requirements of 18 U.S.C. § 3582(c)(1)(A), the Court should deny defendant's motion for compassionate release. If the Court disagrees, at a minimum, the Court should require defendant to undergo a 14-day quarantine period and medical clearance prior to release to minimize the possibility of any spread of COVID-19 from the inmate to the public.

Respectfully submitted,

Marc Krickbaum
United States Attorney

By: */s/ Margaret A. Steindorf*
Margaret A. Steindorf
Special Assistant United States Attorney
U.S. Courthouse Annex, Suite 286
110 East Court Avenue
Des Moines, Iowa 50309
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: Margaret.Steindorf@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2020, I
electronically filed the foregoing with the
Clerk of Court using the CM ECF system. I hereby
certify that a copy of this document was served

on the parties or attorneys of record by:

\_\_\_\_U.S. Mail  \_\_\_\_\_ Fax  \_\_\_\_\_Hand Delivery

  X   ECF/Electronic filing    \_\_\_\_Other means

UNITED STATES ATTORNEY

By: /s/ Madison Lancaster
        Paralegal Specialist